UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

NARUMI VARGAS
f/k/a NARUMI COLLADO,

   Plaintiff,

vs.

FLORIDA CRYSTALS CORPORATION,
a Foreign Profit Corporation,

   Defendant.

_____/

## **COMPLAINT**

  Plaintiff, Narumi Vargas f/k/a Narumi Collado ("Ms. Vargas" or "Plaintiff") sues Florida

Defendant, Florida Crystals Corporation ("Florida Crystals" or "Defendant") and states:

## **GENERAL ALLEGATIONS**

  1. This is a proceeding for damages and equitable relief to redress Defendant,

Florida Crystals's deprivation of rights secured to the Plaintiff by the Family and Medical Leave

Act, 29 U.S.C. 2601-2654 ("FMLA"), because of Florida Crystals's interference and retaliation,

and based upon Florida Crystals's failure to accommodate Ms. Vargas, its discrimination against

Ms. Vargas on account of her disability, hostile environment and its retaliation against her for

having exercised her right to seek reasonable accommodation under the Americans With

Disabilities Act, 42 U.S.C. 12101 et. seq., as amended by the ADA Amendments Act of 2008

("ADA").

  2. Ms. Vargas, an Executive Secretary for Florida Crystals, who, at all times

material hereto, suffers from and has suffered from various health conditions, including, but not

limited to, Barrett's Esophagus, gastritis, acid reflux issues and gall bladder issues, was

1

wrongfully denied her full rights under the FMLA and the ADA accommodation to receive additional and necessary ongoing medical care and treatments by Florida Crystals.

3.      Ms. Vargas, is an individual over eighteen years of age, residing and domiciled in Palm Beach County, Florida, and is otherwise sui juris.

4.      Florida Crystals, at all times relevant to this action, is a fully integrated cane sugar company with 190,000 acres of land in Palm Beach County, Florida, where it also owns two sugar mills, a sugar refinery, a packaging and distribution center, a rice mill and the largest renewable power plant in North America.  Florida Crystals is headquartered in West Palm Beach, Palm Beach County, Florida. Florida Crystals is incorporated under the laws of the State of Delaware.

5.      All of the acts described herein occurred in Palm Beach County, Florida.

6.      Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. §1331 and 29 U.S.C. §2601 et seq. under the FMLA and 29 U.S.C. §2615 under the ADA.

7.      Venue is appropriate in this Court as the claims stated herein arose in Palm Beach County, Florida and the Ms. Vargas resides here and Florida Crystals's office is located here.

8.      At all times material hereto, Florida Crystals was engaged in an industry affecting commerce and had fifty or more employees for each working day in each of twenty or more calendar weeks in the year and twelve months preceding the Ms. Vargas's forced resignation on or about May 29, 2015.

9.      At all times material hereto, Ms. Vargas, was an employee of Florida Crystals as is defined under the FMLA and ADA, and worked in excess of twelve months for Florida Crystals during the consecutive twelve-month period preceding May 29, 2015.

10.    At all times material hereto, Ms. Vargas worked in excess of 1,250 hours during the consecutive twelve-month period preceding May 29, 2015.

11.    At all times material hereto, Ms. Vargas worked at a location that is within 75 miles of a worksite where at least fifty employees are employed by Florida Crystals.

12.    For nearly five (5) years, Ms. Vargas was employed as an Executive Secretary for Florida Crystals, most recently for Douglas Romain, Vice President of GSC, Chief Executive Officer of ASR Germany ("Mr. Romain").

13.    Throughout her employment with Florida Crystals, Ms. Vargas performed her job in an exemplary manner as a dedicated, loyal, hard-working employee.  Ms. Vargas maintained an excellent relationship with her co-workers, superiors and supervisors, including, but not limited to Mr. Romain, at least until he interfered with her rights and retaliated against her in violation of the FMLA, and decided not to, and refused to, accommodate Ms. Vargas, discriminated against her, created a hostile environment affecting her and retaliated against her based on her disability, in violation of the ADA.

14.    Sometime in 2011, Ms. Vargas began working for Mr. Romain.

15.    Beginning in 2012, Ms. Vargas began to, on occasion, work remotely, which was common amongst employees in Ms. Vargas's position and an accepted business practice of Florida Crystals.

16.    For nearly two years, Ms. Vargas sporadically worked remotely without objection from Mr. Romain or Florida Crystals.

17.    In or about March or April 2014, Ms. Vargas developed gastrointestinal ("GI") problems which resulted in severe gastritis, which was very painful to Ms. Vargas and required frequent trips to the restroom.   Ms. Vargas also had difficulty swallowing food, and often

3

became sick after eating, which presented another set of symptoms, problems and challenges in the workplace. During this time, Ms. Vargas was experiencing and suffering from Gastro Esophageal Reflux Disease (GERD).

18.     Due to her chronic medical condition, Ms. Vargas began to work remotely more frequently.  Again, Ms. Vargas did so without objection from Mr. Romain or Florida Crystals.

19.     When Ms. Vargas needed to work remotely she always informed Mr. Romain and explained that she was doing so because she was not feeling well.

20.     In or about March or April 2014, Ms. Vargas confided in Susan Needham, Global Supply Chain Manager (who also worked closely with and reported to Mr. Romain) ("Ms. Needham"), about her ongoing health problems and her need to work from home.

21.     Ms. Needham was in constant contact with Mr. Romain and communicated to him the situation involving Ms. Vargas.

22.     On or about May 5, 2014, Ms. Vargas was criticized without justification and for the first time by Mr. Romain in her Annual Review for her "requests to be out of the office a significant amount of time."  He actually wrote: "…and while I have no problem with this on an infrequent basis, it has been to a level that is an increasing concern".

23.     At no point before, during or subsequent to Ms. Vargas's Annual Review, did Mr. Romain, nor anyone from Human Resources, nor anyone else, ever ask Ms. Vargas why she was working remotely more frequently than she had in the past.

24.     Mr. Romain knew the reasons why Ms. Vargas was working remotely due to her condition.

25.     Ms. Needham was or became aware of Mr. Romain's criticism of Ms. Vargas in her review.

26.     Mr. Romain had put Ms. Vargas in fear of losing her job if she worked remotely as she needed to do, and had been warned not to do. As a result, Ms. Vargas stopped working remotely and, instead, reported to the office, even when she was not feeling well and, often, when it was nearly physically impossible to do so.

27.     Over the next several months, Ms. Vargas continued to work with her doctors as best she could in their efforts to arrive at a diagnosis and definitive treatment schedule.

28.     In August, 2014, Mr. Romain was assigned to work out of Florida Crystals's London office and Ms. Vargas remained his executive assistant.

29.     On or about October 1, 2014, Ms. Vargas notified Mr. Romain in an email, more specifically, of her medical condition and then-current medical treatment and, hence, her need to work remotely and be able to take time off to deal with her medical needs.

30.     Mr. Romain replied and acknowledged to Ms. Vargas his awareness of the acuteness of her health condition with his comment that she was "struggling" with her health condition.

31.     Mr. Romain even suggested to Ms. Vargas that she try a specific alternative medicine with which his own wife had success with, in treating her own similar medical problems.

32.     Mr. Romain also suggested that Ms. Vargas seek the care of his wife's doctor and provided his wife's telephone numbers to her, stating that she would be "happy to discuss" Ms. Vargas's medical condition with her.

33.     Mr. Romain clearly regarded Ms. Vargas as having a serious medical condition.

34.     Both before and after October 1, 2014, Ms. Vargas and Mr. Romain had ongoing conversations about Ms. Vargas's medical conditions and overall health (including her dietary

restrictions, food elimination, use of holistic medicine and acupuncture and meditation therapies).

35.     Mr. Romain also knew that Ms. Vargas needed intermittent leave and other accommodations including, but not limited to, the ability to work remotely (as she had done before and as others had done with impunity) and time to attend doctor and other healthcare-related visits.

36.     Additionally, Mr. Romain and Ms. Needham, and other Florida Crystals management level employees observed Ms. Vargas meditating with ear buds, posting a meditative quotes poster in her cubicle, keeping lights off, etc. to reduce her stress to, in turn, reduce the conditions she was experiencing.

37.     Yet, at no point, did Mr. Romain, nor anyone else at Florida Crystals:

    A.  Inform Ms. Vargas of her rights under the ADA or under Florida Crystals's leave policy or other disability benefits available to her;

    B.  Comply with Florida Crystals's legal obligations to provide her with the materials it was obligated to provide to her;

    C.   Ask Ms. Vargas if she needed intermittent, or other leave, or an accommodation (e.g. to work remotely, as she did previously, or have time off intermittently to take care of her medical needs, visit healthcare providers etc.); or

    D.  Engage in the interactive process as required under the ADA, among other legal obligations.

38.     As Ms. Vargas's problems with her medical condition continued, Mr. Romain became more intolerant of her needs and more concerned about his own perceived needs.

39.     Notwithstanding Ms. Vargas's needs, Mr. Romain wanted to have an Executive Assistant who would be available to him at his beck and call.

40.     As Ms. Vargas's conditions persisted without resolution, Mr. Romain embarked on a plan to ensure that he would have an executive assistant of his own always available to him.

41.     Mr. Romain knew that he couldn't fire Ms. Vargas outright, so he decided to intimidate Ms. Vargas into either: a) succumbing to his wishes that she be present at her desk at all times, or b) quitting so he could replace her out of his own selfish misperceived concerns.

42.     Despite all of the foregoing, Mr. Romain forced Ms. Vargas to make a Hobbesian choice, between taking needed time off and working from home, at times, to protect her health, on the one hand, versus avoiding taking time off, or working from home in order to keep her job, on the other hand.

43.     On or about October 17, 2014, Mr. Romain (for the first time in their 3 year working relationship) asked Ms. Vargas to complete a Self-Evaluation prior to her mid-year review.  Ms. Vargas obliged and then shared her completed Self-Evaluation with Ms. Needham, and asked her to review it before she submitted it to Mr. Romain.  Ms. Needham agreed to do so and told Ms. Vargas that she would provide feedback if she had any.  Most noteworthy is Ms. Vargas's suggestion, contained within the Overall Employee Comments section of the Self-Evaluation, that a "[f]ollow through on previous HR related conversations would also benefit me".

44.     On or about October 22, 2014, Ms. Needham told Ms. Vargas that she approved of Ms. Vargas's draft Self-Evaluation as it was presented to her, and that she had no suggestions to Ms. Vargas's positive responses or narratives.

45.    Later that same day, Ms. Vargas submitted this Self-Evaluation to Mr. Romain, as he had requested.

46.    On or about October 31, 2014, Ms. Vargas's Mid-Year Review ("Mid-Year Review") was conducted by Mr. Romain, who gave Ms. Vargas a negative review for the first time. Despite the fact that Ms. Needham had concurred with Ms. Vargas's positive self-review, Mr. Romain expressed disagreement with the positive statements made by Ms. Vargas about her own performance. In addition, much to Ms. Vargas's surprise, out of the blue, without any prior notice or warning, and for the first time, Mr. Romain included unwarranted negative remarks concerning Ms. Vargas based on artificial, bogus, unfair, pre-textual reasons despite her superlative performance.

47.    In her Mid-Year Review, Mr. Romain made negative comments to Ms. Vargas about her being out of the office due to her illness.

48.    Also, for the first time in their working relationship, Mr. Romain called into question his "trust" of Ms. Vargas, as if she had done something to call into question his trust of her. Ms. Vargas had not done anything to warrant that criticism, other than perhaps Mr. Romain equating Ms. Vargas's not feeling well, needing to work remotely, or taking time off, as making her "untrustworthy."

49.    As part of his review, Mr. Romain stated that Ms. Vargas needed to "rebuild the trust and confidence that (he) had previously afforded her". That was his code language for, you better be sure not to take off any time or work remotely.

50.    Also during Ms. Vargas's Mid-Year Review, Mr. Romain unfairly criticized and penalized her for his having to use his time (which he regarded as precious) to comply with Florida Crystals' payroll policy which required him, as Ms. Vargas's supervisor, to approve Ms.

Vargas's timecards so her payroll could be processed. Mr. Romain viewed this administrative task as menial, one that he should not be bothered with, and, therefore, he included his negative criticism of Ms. Vargas to penalize her for his having to pay increased attention to her time records on account of her medical condition.

51.     Although Ms. Vargas was unfairly criticized by Mr. Romain for working remotely, and was intimidated into reducing or eliminating those instances in which she did so, her similarly-situated co-workers continued to work remotely, without objection from their supervisors or Florida Crystals.

52.     Ms. Vargas shared her negative Mid-Year Review with Ms. Needham, who was shocked by Mr. Romain's negative review of Ms. Vargas and his unwarranted and unfair criticisms of her.

53.     On or about February 24, 2015, when it became clear to Ms. Vargas that her health condition was worsening and required more extensive ongoing treatment, and wanting to ensure that her personnel file had been documented with her prior grievances, Ms. Vargas communicated with Cynthia Parrilla, Human Resources' Benefits and Compensation Manager ("Ms. Parrilla"), about her myriad of health problems and that she would need some time off from work to attend doctor appointments and undergo treatment as may be needed.

54.     Ms. Vargas also expressed concern regarding her increasingly strained relations with Mr. Romain which had deteriorated into a hostile work environment. During this conversation, Ms. Vargas told Ms. Parrilla that she felt she was being discriminated against because of her medical condition and that Mr. Romain was sabotaging her work and future with Florida Crystals, by giving her artificially contrived negative reviews.

55.     Ms. Parrilla failed to provide Ms. Vargas with any guidance whatsoever. Instead, Ms. Parrilla attempted to downplay and trivialize Ms. Vargas's concerns and even warned Ms. Vargas by saying that she (Ms. Vargas) "didn't want to use the "D word" (discrimination) or the "R word" (retaliation).

56.     In an attempt to pacify Ms. Vargas, Mr. Parrilla told her that she would speak with Jose Perez, Vice President of Human Resources ("Mr. Perez"), and, if an investigation of Ms. Vargas's concerns was necessary, that one would be conducted.

57.     Around this same time, Ms. Vargas sent a request to Human Resources for her to be able to view the contents of her own personnel file, which was denied without explanation.

58.     Ms. Vargas never received a response, of any kind, from Mr. Perez, Ms. Parrilla, nor anyone else at Florida Crystals about the grievances she communicated to Ms. Parrilla on February 24, 2015.

59.     No investigation was ever conducted.

60.     On Monday, May 4, 2015, Ms. Vargas was admitted to the hospital for emergency treatment of her medical condition. During her three day stay in the hospital, Ms. Vargas underwent a battery of tests, a biopsy and an upper gastrointestinal endoscopy procedure.

61.     Ms. Vargas was discharged from the hospital on Wednesday, May 6, 2015. Ms. Vargas stayed at home to recuperate and did not report to work on Thursday, May 7, 2015 or Friday, May 8, 2015.

62.     While in the hospital, Ms. Vargas kept Mr. Romain apprised of her condition.

63.     On Thursday, May 7, 2015, inexplicably, Mr. Romain for reasons best known to him, took it upon himself to send Ms. Vargas a text message telling her not to bring her medical records to work, but, rather, to bring only a "doctors note clearing (her) to return to work".

10

64.     Upon Ms. Vargas's return to work the following Monday, May 11, 2015, she immediately presented Mr. Romain with documentation from the hospital indicating that she could return to work, but that additional procedures were needed. The documentation also indicated that Ms. Vargas needed to see her medical specialist within 2 weeks of her just recent hospitalization.

65.     Soon after her arrival, Ms. Vargas received notification from Mr. Romain that, unbeknownst to her, without any warning and without providing her with an opportunity to prepare, her Annual Review had been scheduled for later that morning, i.e., her first day back.

66.     Ms. Vargas's Annual Review was conducted as scheduled by Mr. Romain.  He had already pre-prepared a negative review. Again, Mr. Romain gave Ms. Vargas an artificially bad review, giving her an "unsatisfactory" rating for Dependability (which included her attendance record).  Mr. Romain criticized Ms. Vargas for being "out sick a total of 23 days or the equivalent of more than one working month over the year." That number actually included the 5 days Ms. Vargas was out during her hospitalization.

67.     Mr. Romain went on to state "23 days absent over the 12 months is not acceptable. Narumi needs to work on developing ways to significantly reduce this and improve the overall dependability."

68.     Exhibiting further gross insensitivity during her Annual Review, Mr. Romain told Ms. Vargas, *"That's not going to work for me!"*

69.     Ms. Vargas was made to understand, and she reasonably inferred, that, if she took time off as needed, she would be fired.

70.     Mr. Romain knew that his negative review on her first day back would impose extraordinary additional stress upon Ms. Vargas, which, in turn, would likely exacerbate her medical condition and facilitate his plan to rid himself of Ms. Vargas.

71.     After feeling threatened by Mr. Romain at her review, Ms. Vargas put off visiting her specialist as she had been directed to do out of fear of being fired for taking time off, especially because Florida Crystals did nothing to qualify Ms. Vargas for FMLA benefits or do anything to attempt to accommodate her. Ms. Vargas verbalized as much to Ms. Needham as well as Jason Moore (Director of Global Supply Chain, who worked with Mr. Romain).

72.     After being abused by Mr. Romain again at her review, and after realizing that Florida Crystals was not going to do anything to help her, Ms. Vargas decided that her health and life were more important to her than succumbing to Mr. Romain's intimidation.

73.     Mr. Romain deliberately made Ms. Vargas's working conditions so intolerable that she was forced into an involuntary resignation.

74.     Ms. Vargas's working conditions became so intolerable that a reasonable person in her position would have been compelled to resign.

75.     Having been failed by her supervisor, Mr. Romain, Human Resources' Ms. Parrilla and Mr. Perez, and Florida Crystals, Ms. Vargas felt as though she had no other option than to tender her involuntary resignation.

76.     Ms. Vargas involuntarily resigned in order to escape intolerable and illegal employment requirements to which she was being subjected because of her serious medical condition, disability, need for time off to attend medical appointments, and need to work from home part of the time.

77.     As such, Ms. Vargas was constructively discharged. See *Henson v. City of Dundee*, 682 F.2d 897, 907 (11th Cir. 1982), quoting *Young v. Southwestern Savings & Loan Ass'n*. 509 F.2d 140,144 (5th Cir. 1975).

78.     Ever the considerate employee, Ms. Vargas waited to inform Mr. Romain until he completed his vacation to inform him that she had been forced to leave Florida Crystals.[1]

79.     On May 29, 2015, Ms. Vargas emailed her Letter of Resignation to both Mr. Romain and Mr. Perez, giving 2 weeks' notice (with her last day being Friday, June 12, 2015).

80.     On June 1, 2015, Ms. Vargas met Ms. Parrilla (at Ms. Parrilla's request) for lunch at Kabuki restaurant.  Although Ms. Parrilla's purpose in asking Ms. Vargas to go to lunch is unclear, Ms. Vargas learned that Ms. Parrilla had also tendered her own resignation.  During the lunch, Ms. Parrilla did report that she had spoken to Mr. Perez (as she had promised on February 25, 2015), but apologized that nothing came of it.

81.     No one at Florida Crystals tried to talk Ms. Vargas out of resigning from her position with Mr. Romain as his Executive Secretary. After all, the plan all along was to rid Mr. Romain of Ms. Vargas. Florida Crystals accommodated Mr. Romain instead of accommodating Ms. Vargas.

82.     On June 12, 2015, Ms. Vargas's last day with Florida Crystals, she completed and returned the Exit Interview Questionnaire, as requested.  Ms. Vargas noted her previous efforts to address the concerns she communicated to Human Resources via Ms. Parrilla and their failure to respond whatsoever.  Ms. Vargas also noted that she was never contacted by Mr. Perez as he stated he would.  No one from the Human Resources Department, including Ms. Parrilla or Mr.

---

[1] Contrast that with Mr. Romain's gross insensitivity when he scheduled Ms. Vargas's annual review immediately upon her return after her hospitalization.

Perez, met with Ms. Vargas regarding her Exit Interview Questionnaire, her involuntary resignation, her departure or anything else.

83.     Soon after her last day of employment, Ms. Vargas's ailment was finally diagnosed as having the condition known as Barrett's Esophagus[2], a precancerous disease of the esophagus and the primary risk factor for esophageal cancer.

84.     Ms. Vargas has exhausted and fulfilled all conditions precedent to the institution of this action. All conditions precedent occurred, were performed or were excused. Ms. Vargas timely filed a Charge of Discrimination. Ms. Vargas has timely filed this lawsuit.

85.     Ms. Vargas has retained the firm of Schwarzberg & Associates and promised to pay it reasonable attorneys' and paralegal's fees and costs for its services.

## COUNT I
## FMLA INTERFERENCE

86.     Ms. Vargas re-alleges the General Allegations as if fully set forth herein.

87.     Ms. Vargas was never offered FMLA benefits.

88.     Ms. Vargas continued to use her sick time for medical appointments and days she was ill.

89.     At all times material, Ms. Vargas was eligible, and Florida Crystals knew she was eligible, for all benefits under the FMLA and that her leave was for an FMLA-qualifying reason.

90.     At all times material, Ms. Vargas was suffering from a serious health condition within the meaning of 29 U.S.C. §2612.

---

[2] Barrett's esophagus occurs when the cells of the esophagus begin to change due to chronic acid exposure. These abnormal cell changes are known as "dysplasia." Because it is strongly associated with esophageal cancer, Barrett's esophagus is considered a precancerous disease.

14

91.     Title 29 U.S.C. §2615 provides that it shall be unlawful for any employer to interfere with, restrain or deny the exercise of, or the attempt to exercise, the right provided under that Title.

92.     At all times material, Ms. Vargas was in need of a medical leave of absence due to a health related condition.

93.     At all times material, Florida Crystals was aware of Ms. Vargas's need for FMLA leave.

94.     At all times material, Ms. Vargas was entitled to leave under the FMLA.

95.     At all times material, Ms. Vargas had qualifying reasons for benefits under the FMLA.

96.     Florida Crystals never informed or notified Ms. Vargas of her rights under the FMLA.

97.     Florida Crystals never provided Ms. Vargas with the paperwork, information and documentation it was required to provide related to FMLA benefits.

98.     Florida Crystals did not do what was legally required of it in order to qualify Ms. Vargas for FMLA benefits.

99.     Florida Crystals unlawfully interfered with Ms. Vargas's exercise of her FMLA rights.

100.     Florida Crystals willfully concealed and refused to inform Ms. Vargas of her FMLA eligibility.

101.     At all times material, or at any time by which Ms. Vargas's FMLA eligibility would have expired, she was capable of performing all of the tasks related to her work and would

15

have resumed working for Florida Crystals had Florida Crystals placed her back in her position, or a similar position, as required by the FMLA.

102.   Ms. Vargas was suffering from a serious health condition that would have entitled Ms. Vargas to leave under the FMLA.

103.   Florida Crystals unlawfully interfered with Ms. Vargas's exercise of her FMLA rights, and thus violated 29 U.S.C. §2615, denying Ms. Vargas her substantive rights under the FMLA, including but not limited to:

A.   By failing to clearly post notice to all employees, notice of their FMLA rights, remedies and obligations under 29 U.S.C. §2619(a);

B.   By failing to provide notice to Ms. Vargas in the employee handbook or other materials as required by 29 USC. §2619;

C.   By failing to provide Ms. Vargas with individualized notice and requisite paperwork, of her FMLA rights and obligations under 29 U.S.C. §2619(b)(l) after Ms. Vargas advised Florida Crystals of her initial and/or continued need for medical leave;

D.   By concealing Ms. Vargas's FMLA eligibility and failing to qualify her for benefits;

E.   By interfering with Ms. Vargas's rights to protected leave under the FMLA;

F.   By threatening Ms. Vargas that her pursuit of protected leave under the FMLA would jeopardize or adversely affect the terms and conditions of her employment.

G.   By utilizing or considering Ms. Vargas's protected leave under the FMLA as a reason or basis for her termination; and

H.   By constructively terminating Ms. Vargas's employment.

16

104.   The violations of 29 U.S.C. §2615 committed by Florida Crystals were done in bad faith and without reasonable ground.

105.   Florida Crystals's actions in concealing Ms. Vargas's FMLA eligibility, failing to provide the requisite paperwork, interfering with her rights under the FMLA, and denying her leave as requested, violated its duties under the FMLA, such violation having caused damage to Ms. Vargas.

106.   As a direct and proximate result of Florida Crystals's unlawful treatment, Ms. Vargas has suffered damages and will continue to suffer irreparable injury and damages in the future, under the FMLA.

107.   Ms. Vargas is entitled to an award of reasonable attorneys' and paralegal's fees, expert fees, costs and expenses related to this litigation under the FMLA.

WHEREFORE, Ms. Vargas, respectfully requests that this Honorable Court enter judgment against Florida Crystals, for all remedies recoverable under the FMLA, including, but not limited to compensation and all benefits lost because of Florida Crystals's violation (including, but not limited to, all back pay, front pay, benefits, interest, and other damages in addition to liquidated damages resulting from Florida Crystals's willful violations in an amount twice the actual damages determined), other monetary losses sustained as a result of the violation, and any other appropriate equitable relief (including, but not limited to, employment reinstatement, promotion or any other relief tailored to the harm suffered), interest, attorneys' and paralegal's fees, expert witness fees and costs, and any other lawful and equitable relief this Court deems to be just and proper.

## COUNT II
## FMLA RETALIATION

108.   Ms. Vargas re-alleges the General Allegations as if fully set forth herein.

109.    Ms. Vargas was never offered FMLA benefits.

110.    Ms. Vargas continued to use her sick time for medical appointments and days she was ill.

111.    At all times material, Ms. Vargas was eligible, and Florida Crystals knew she was eligible for all benefits under the FMLA and that her leave was for an FMLA-qualifying reason.

112.    At all times material, Ms. Vargas was suffering from a serious health condition within the meaning of 29 U.S.C. §2612.

113.    Title 29 U.S.C. §2615 provides that it shall be unlawful for any employer to interfere with, restrain or deny the exercise of, or the attempt to exercise, the right provided under that Title.

114.    At all times material, Ms. Vargas was in need of a medical leave of absence due to a health related condition.

115.    At all times material, Florida Crystals was aware of Ms. Vargas's need for FMLA leave.

116.    At all times material, Ms. Vargas was entitled to leave under the FMLA.

117.    At all times material, Ms. Vargas had qualifying reasons for benefits under the FMLA.

118.    Florida Crystals never informed or notified Ms. Vargas of her rights under the FMLA.

119.    Florida Crystals never provided Ms. Vargas with the paperwork, information and documentation it was required to provide related to FMLA benefits.

120.    Florida Crystals did not do what was legally required of it in order to qualify Ms. Vargas for FMLA benefits.

121.    Florida Crystals unlawfully interfered with Ms. Vargas's exercise of her FMLA rights.

122.    Florida Crystals willfully concealed and refused to inform Ms. Vargas of her FMLA eligibility.

123.    At all times material, or at any time by which Ms. Vargas's FMLA eligibility would have expired, she was capable of performing all of the tasks related to her work and would have resumed working for Florida Crystals had Florida Crystals placed her back in her position, or a similar position, as required by the FMLA.

124.    Ms. Vargas had a serious health condition that would have entitled her to leave under the FMLA.

125.    Title 29 U.S.C. §2615 provides that it shall be unlawful for an employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this Title.

126.    Florida Crystals unlawfully retaliated against Ms. Vargas's attempted exercise of her rights under the FMLA by:

A. failing and refusing to provide FMLA benefits to which Ms. Vargas was entitled;

B. interfering with the terms and conditions of Ms. Vargas's employment;

C. constructively terminating Ms. Vargas because of her request for leave or concern that Ms. Vargas would take the leave to which she was entitled;

D. ignoring her disability;

E. failing and refusing to engage in the interactive process;

F. failing to provide a reasonable accommodation;

G. refusing to provide a reasonable accommodation;

H.  failing to investigate her complaints;

I.  failing to investigate her complaints timely;

J.  failing to take reasonable steps to handle and/or resolve her complaints;

K.  failing to allow her to work remotely from home even though other similarly-situated employees were allowed to do so;

L.  failing to allow her to leave work to attend appointments for health care services;

M.  failing to allow her to work remotely from home even though other similarly-situated employees were allowed to do so;

N.  failing to provide or allow intermittent leave;

O.  giving her unwarranted negative performance reviews;

P.  intimidating, threatening and maligning her;

Q.  subjecting her to a hostile work environment;

R.  taking other adverse employment actions against her; and

S.  constructively terminating Ms. Vargas because of her request for leave or concern that Ms. Vargas would take the leave to which she was entitled.

127.    The violations of 29 U.S.C. §2615 committed by Florida Crystals were done in bad faith and without reasonable ground.

128.    Florida Crystals's actions were intentional, willful, and in retaliation against Ms. Vargas, in violation of the FMLA.

129.    Florida Crystals's decision to adversely affect Ms. Vargas was both connected to, and in response to, Ms. Vargas's need for FMLA leave.

130.    As a direct and proximate result of Florida Crystals's unlawful treatment, Ms. Vargas has suffered damages and will continue to suffer irreparable injury and damages in the future, under the FMLA.

131.    Ms. Vargas is entitled to an award of reasonable attorneys' and paralegal's fees, expert fees, costs and expenses related to this litigation under the FMLA.

WHEREFORE, Ms. Vargas, respectfully requests that this Honorable Court enter judgment against Florida Crystals, for all remedies recoverable under the FMLA, including, but not limited to, compensation and all benefits lost because of Florida Crystals's violation (including, but not limited to, all back pay, front pay, benefits, interest, and other damages in addition to liquidated damages resulting from Florida Crystals's willful violations in an amount twice the actual damages determined), other monetary losses sustained as a result of the violation, and any other appropriate equitable relief (including, but not limited to, employment reinstatement, promotion or any other relief tailored to the harm suffered), interest, attorneys' and paralegal's fees, expert witness fees and costs, and any other lawful and equitable relief this Court deems to be just and proper.

## COUNT III
## FAILURE TO ACCOMMODATE UNDER THE ADA

132.    Ms. Vargas incorporates the General Allegations, as though fully set forth herein.

133.    Ms. Vargas is a qualified individual with a disability, having a record of permanent physical impairment, and/or is regarded by Florida Crystals as having permanent physical impairment, specifically Barrett's Esophagus, gastritis and GERD.

134.    Ms. Vargas's disability substantially limits one or more major life activities including, but not limited to, caring for oneself, performing manual tasks, eating, sleeping,

walking, standing, bending, concentrating, thinking, communicating, and working, and among other complications, she suffers from a precursor to esophageal cancer.

135.    Ms. Vargas is a qualified individual with a disability because, with or without reasonable accommodation, she is able to perform the essential functions of the Executive Secretary position she performs at Florida Crystals.

136.    At all times relevant to this Complaint, Ms. Vargas's disability was known to Florida Crystals.

137.    Florida Crystals violated the rights of Ms. Vargas under the Americans With Disabilities Act, 42 U.S.C. 12101, et seq., as amended, in numerous ways including:

    A.  ignoring her disability;

    B.  failing and refusing to engage in the interactive process;

    C.  failing to provide a reasonable accommodation;

    D.  refusing to provide a reasonable accommodation;

    E.  failing to investigate her complaints;

    F.  failing to investigate her complaints timely;

    G.  failing to take reasonable steps to handle and/or resolve her complaints;

    H.  failing to allow her to work remotely from home even though other similarly-situated employees were allowed to do so;

    I.  failing to allow her to leave work to attend appointments for health care services;

    J.  failing to allow her to work remotely from home even though other similarly-situated employees were allowed to do so;

    K.  failing to provide or allow intermittent leave;

    L.  giving her unwarranted negative performance reviews;

M. intimidating, threatening and maligning her;

N. subjecting her to a hostile work environment;

O. taking other adverse employment actions against her; and

P. retaliating against her.

138.    Florida Crystals's failure to accommodate Ms. Vargas caused her to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life. Florida Crystals's actions also caused Ms. Vargas's health to worsen significantly.

139.    Florida Crystals's actions in failing to accommodate Ms. Vargas as alleged herein were egregious and taken in conscious disregard of or with deliberate indifference to Ms. Vargas's rights outrageously, wantonly, and oppressively, and with legal and actual malice.

WHEREFORE, Ms. Vargas respectfully requests that the Court enter judgment in her favor and award her the following relief:

A. An Order declaring that Florida Crystals violated her civil rights under The Americans With Disabilities Act, 42 U.S.C. 12101 et. seq., as amended, and restraining and enjoining Florida Crystals from further such violations;

B. Back pay, front pay, and other benefits lost as a result of Ms. Vargas unlawfully being denied a reasonable accommodation;

C. Compensatory and punitive damages in an amount to be determined at trial to compensate her for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of

enjoyment of life, and detrimental impact on her health caused by Florida Crystals's unlawful actions;

D.   Record correction to remove the negative performance appraisals from her personnel file and replace it with one rating her at the "Exceeds Expectations" level in each performance area or a substantially similar correction;

E.   The attorneys' and paralegal's fees and costs incurred by Ms. Vargas; and

F.   Such other relief as may be just and appropriate.

**COUNT IV**
**DISABILITY DISCRIMINATION UNDER THE ADA**

140.   Ms. Vargas incorporates the General Allegations, as though fully set forth herein.

141.   Ms. Vargas is a qualified individual with a disability, having a record of permanent physical impairment, and/or is regarded by Florida Crystals as having permanent physical impairment, specifically Barrett's Esophagus, gastritis and GERD.

142.   Ms. Vargas's disability substantially limits one or more major life activities including, but not limited to, caring for oneself, performing manual tasks, eating, sleeping, walking, standing, bending, concentrating, thinking, communicating, and working and among other complications, she suffers from a precursor to esophageal cancer.

143.   Ms. Vargas is a qualified individual with a disability because, with or without reasonable accommodation, she is able to perform the essential functions of the Executive Secretary position she performs at Florida Crystals.

144.   At all times relevant to this Complaint, Ms. Vargas's disability was known to Florida Crystals.

145.   Florida Crystals violated the rights of Ms. Vargas under the Americans With Disabilities Act, 42 U.S.C. 12101, et. seq., as amended, in numerous ways including:

24

A.  ignoring her disability;

B.  failing and refusing to engage in the interactive process;

C.  failing to provide a reasonable accommodation;

D.  refusing to provide a reasonable accommodation;

E.  failing to investigate her complaints;

F.  failing to investigate her complaints timely;

G.  failing to take reasonable steps to handle and/or resolve her complaints;

H.  failing to allow her to work remotely from home even though other similarly-situated employees were allowed to do so;

I.  failing to allow her to leave work to attend appointments for health care services;

J.  failing to allow her to work remotely from home even though other similarly-situated employees were allowed to do so;

K.  failing to provide or allow intermittent leave;

L.  giving her unwarranted negative performance reviews;

M.  intimidating, threatening and maligning her;

N.  subjecting her to a hostile work environment;

O.  taking other adverse employment actions against her; and

P.  retaliating against her.

146.   Florida Crystals's discrimination against Ms. Vargas caused her to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life. Florida Crystals's actions also caused Ms. Vargas's health to worsen significantly.

147.    Florida Crystals's actions in discriminating against Ms. Vargas as alleged herein were egregious and taken in conscious disregard of or with deliberate indifference to Ms. Vargas's rights outrageously, wantonly, and oppressively, and with legal and actual malice.

148.    Florida Crystals violated the Americans With Disabilities Act, 42 U.S.C. 12101, et. seq., as amended, and discriminated against Ms. Vargas due to her disability by subjecting Ms. Vargas to Florida Crystals's actions based on Ms. Vargas's disability, and were taken either as pretexts to discrimination or as a result of Florida Crystals's mixed motives, at least one of which was discrimination.

149.    Florida Crystals's discrimination caused Ms. Vargas to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life. Florida Crystals's actions also caused Ms. Vargas's health to worsen significantly.

WHEREFORE, Ms. Vargas respectfully requests that the Court enter judgment in her favor and award her the following relief:

A.    An Order declaring that Florida Crystals violated her civil rights under The Americans With Disabilities Act, 42 U.S.C. 12101 et. seq., as amended, and restraining and enjoining Florida Crystals from further such violations;

B.    Back pay, front pay, and other benefits lost as a result of Ms. Vargas unlawfully being discriminated against;

C.    Compensatory and punitive damages in an amount to be determined at trial to compensate her for the emotional pain, embarrassment,

26

humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on her health caused by Florida Crystals's unlawful actions;

D.     Record correction to remove the negative performance appraisals from her personnel file and replace it with one rating her at the "Exceeds Expectations" level in each performance area or a substantially similar correction;

E.     The attorneys' and paralegal's fees and costs incurred by Ms. Vargas; and

F.     Such other relief as may be just and appropriate.

## COUNT V
## HOSTILE ENVIRONMENT UNDER THE ADA

150.    Ms. Vargas incorporates the General Allegations, as though fully set forth here.

151.    Ms. Vargas is a qualified individual with a disability, having a record of permanent physical impairment, and/or is regarded by Florida Crystals as having permanent physical impairment, specifically Barrett's Esophagus, gastritis and GERD.

152.    Ms. Vargas s disability substantially limits one or more major life activities including but not limited to caring for oneself, performing manual tasks, eating, sleeping, walking, standing, bending, concentrating, thinking, communicating, and working and in that, and among other complications, she suffers from a precursor to esophageal cancer.

153.    Ms. Vargas is a qualified individual with a disability because, with or without reasonable accommodation, she is able to perform the essential functions of the executive assistant position she performs at Florida Crystals.

154.    At all times relevant to this Complaint, Ms. Vargas's disability was known to Florida Crystals.

155.    Florida Crystals violated the rights of Ms. Vargas under the Americans With Disabilities Act, 42 U.S.C. 12101, et. seq., as amended, in numerous ways including:

    A.  by ignoring her disability;

    B.  failing and refusing to engage in the interactive process;

    C.  failing to provide a reasonable accommodation;

    D.  refusing to provide a reasonable accommodation;

    E.  failing to investigate her complaints;

    F.  failing to investigate her complaints timely;

    G.  failing to take reasonable steps to handle and/or resolve her complaints;

    H.  failing to allow her to work remotely from home even though other similarly-situated employees were allowed to do so;

    I.  failing to allow her to leave work to attend appointments for health care services;

    J.  failing to allow her to work remotely from home even though other similarly-situated employees were allowed to do so;

    K.  failing to provide or allow intermittent leave;

    L.  giving her unwarranted negative performance reviews;

    M.  intimidating, threatening and maligning her;

    N.  subjecting her to a hostile work environment;

    O.  taking other adverse employment actions against her; and

    P.  retaliating against her.

156.    Florida Crystals's actions amounted to a hostile work environment against Ms. Vargas which caused her to suffer physical and emotional pain, embarrassment, humiliation,

mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life. Florida Crystals's actions also caused Ms. Vargas's health to worsen significantly.

157.    Florida Crystals's actions in creating a hostile work environment against Ms. Vargas as alleged herein were egregious and taken in conscious disregard of or with deliberate indifference to Ms. Vargas's rights outrageously, wantonly, and oppressively, and with legal and actual malice.

158.    Florida Crystals violated the Americans With Disabilities Act, 42 U.S.C. 12101, et. seq., as amended, and created a hostile work environment against Ms. Vargas due to her disability by subjecting Ms. Vargas to Florida Crystals's actions based on Ms. Vargas's disability, and were taken either as pretexts to discrimination or as a result of Florida Crystals's mixed motives, at least one of which was discrimination.

159.    Florida Crystals's creation of a hostile work environment caused Ms. Vargas to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life. Florida Crystals's actions also caused Ms. Vargas's health to worsen significantly.

WHEREFORE, Ms. Vargas respectfully requests that the Court enter judgment in her favor and award her the following relief:

> A.    An Order declaring that Florida Crystals violated her civil rights under The Americans With Disabilities Act, 42 U.S.C. 12101 et. seq., as amended, and restraining and enjoining Florida Crystals from further such violations;

> B.    Back pay, front pay, and other benefits lost as a result of Ms. Vargas unlawfully being subjected to a hostile work environment;

C.    Compensatory and punitive damages in an amount to be determined at trial to compensate her for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on her health caused by Florida Crystals's unlawful actions;

D.    Record correction to remove the negative performance appraisals from her personnel file and replace it with one rating her at the "Exceeds Expectations" level in each performance area or a substantially similar correction;

E.    The attorneys' and paralegal's fees and costs incurred by Ms. Vargas; and

F.    Such other relief as may be just and appropriate.

## COUNT VI
## RETALIATION UNDER THE ADA

160.    Ms. Vargas incorporates the General Allegations, as though fully set forth here.

161.    Ms. Vargas is a qualified individual with a disability, having a record of permanent physical impairment, and/or is regarded by Florida Crystals as having permanent physical impairment, specifically Barrett's Esophagus, gastritis and GERD.

162.    Ms. Vargas s disability substantially limits one or more major life activities including but not limited to caring for oneself, performing manual tasks, eating, sleeping, walking, standing, bending, concentrating, thinking, communicating, and working and in that, and among other complications, she suffers from a precursor to esophageal cancer.

163.    Ms. Vargas is a qualified individual with a disability because, with or without reasonable accommodation, she is able to perform the essential functions of the executive assistant position she performs at Florida Crystals.

164.     At all times relevant to this Complaint, Ms. Vargas's disability was known to Florida Crystals.

165.     Florida Crystals violated the rights of Ms. Vargas under the Americans With Disabilities Act, 42 U.S.C. 12101, et. seq., as amended, in numerous ways including:

A.  by ignoring her disability;

B.  failing and refusing to engage in the interactive process;

C.  failing to provide a reasonable accommodation;

D.  refusing to provide a reasonable accommodation;

E.  failing to investigate her complaints;

F.  failing to investigate her complaints timely;

G.  failing to take reasonable steps to handle and/or resolve her complaints;

H.  failing to allow her to work remotely from home even though other similarly-situated employees were allowed to do so;

I.  failing to allow her to leave work to attend appointments for health care services;

J.  failing to allow her to work remotely from home even though other similarly-situated employees were allowed to do so;

K.  failing to provide or allow intermittent leave;

L.  giving her unwarranted negative performance reviews;

M.  intimidating, threatening and maligning her;

N.  subjecting her to a hostile work environment;

O.  taking other adverse employment actions against her; and

P.  retaliating against her.

166.    Florida Crystals's actions amounted to retaliation against Ms. Vargas which caused her to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life. Florida Crystals's actions also caused Ms. Vargas's health to worsen significantly.

167.    Florida Crystals's actions in retaliating against Ms. Vargas as alleged herein were egregious and taken in conscious disregard of or with deliberate indifference to Ms. Vargas's rights outrageously, wantonly, and oppressively, and with legal and actual malice.

168.    Florida Crystals violated the Americans With Disabilities Act, 42 U.S.C. 12101, et. seq., as amended, and retaliated against Ms. Vargas due to her disability by subjecting Ms. Vargas to Florida Crystals's actions based on Ms. Vargas's disability, and were taken either as pretexts to discrimination or as a result of Florida Crystals's mixed motives, at least one of which was discrimination.

169.    Florida Crystals's retaliation caused Ms. Vargas to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life. Florida Crystals's actions also caused Ms. Vargas's health to worsen significantly.

170.    In taking the foregoing actions, Florida Crystals subjected Ms. Vargas to a severe and pervasive and/or materially adverse hostile work environment on account of Ms. Vargas's disability and/or in reprisal for her protected ADA activity. Florida Crystals's actions would likely have dissuaded a reasonable employee from making or supporting a complaint of discrimination.

171.    Florida Crystals's actions were based on reprisal and were taken either as pretexts to retaliation or as a result of Florida Crystals's mixed motives, at least one of which was

retaliation, for Ms. Vargas's engagement in activity protected under the Americans With Disabilities Act. Florida Crystals's actions would likely have dissuaded a reasonable employee from making or supporting a complaint of discrimination.

WHEREFORE, Ms. Vargas respectfully requests that the Court enter judgment in her favor and award her the following relief:

A.   An Order declaring that Florida Crystals violated her civil rights under The Americans With Disabilities Act, 42 U.S.C. 12101 et. seq., as amended, and restraining and enjoining Florida Crystals from further such violations;

B.   Back pay, front pay, and other benefits lost as a result of Ms. Vargas unlawfully being subjected to a hostile work environment;

C.   Compensatory and punitive damages in an amount to be determined at trial to compensate her for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on her health caused by Florida Crystals's unlawful actions;

D.   Record correction to remove the negative performance appraisals from her personnel file and replace it with one rating her at the "Exceeds Expectations" level in each performance area or a substantially similar correction;

E.   The attorneys' and paralegal's fees and costs incurred by Ms. Vargas; and

F.   Such other relief as may be just and appropriate.

MS. VARGAS HEREBY DEMANDS TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

> SCHWARZBERG & ASSOCIATES
> *Attorneys for Plaintiff, Ms. Vargas*
> 625 North Flagler Drive, Suite 600
> West Palm Beach, FL 33401
> Telephone:        (561) 659-3300
> Facsimile:        (561) 693-4540
>
> By:  /s/ *Steven L. Schwarzberg*
>       STEVEN L. SCHWARZBERG
>       Florida Bar No. 0306134
>       steve@schwarzberglaw.com
>       mail@schwarzberglaw.com
>       LISA M. KOHRING
>       Florida Bar No. 93781
>       lkohring@schwarzberglaw.com
>       mail@schwarzberglaw.com